IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>APPROXIMATELY $70,796 IN UNITED )<br>STATES CURRENCY SEIZED FROM EVAN )<br>ADAMS ON JUNE 12, 2023, AT THE )<br>CHARLOTTE-DOUGLAS INTERNATIONAL )<br>AIRPORT ) | **Civil No. 3:23-CV-825** |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

NOW COMES the United States of America, Plaintiff herein, by and through Dena J. King, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

**INTRODUCTION**

1. This is a civil action *in rem* against approximately $70,796.00 in United States Currency seized from Evan Adams ("Adams") on June 12, 2023, at the Charlotte-Douglas International Airport (the "Currency").

2. The interdiction at issue is straightforward: a drug detection K9 alerted to a checked bag and then a consent search of the bag revealed a large amount of currency hidden among clothes—for which the denominations and bundling were consistent with street level narcotics sales—that was transported by a visibly nervous courier who admitted the money was not his, that he did not actually even know the correct amount of how much he was carrying, and told a false story to law enforcement about the money coming from his cousin (who later confirmed to law enforcement it had not).

3. However, the Currency appears to have been fraudulently claimed by Bianca

1

Wagner (an Ohio resident of dubious credulity, no known connection to either the Currency or Adams, and a long history of bankruptcy filings), through her attorney Leslie Sammis, during the administrative phase, likely in violation of 18 U.S.C. 1001.

4. Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

## NATURE OF THE ACTION

5. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

6. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

7. Venue is proper pursuant to 28 U.S.C. § 1395 because the Currency was seized in the Western District of North Carolina.

8. The Currency has been seized and is now within the Western District of North Carolina.

9. Based on the following facts, verified by Department of Homeland Security, Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Stephen Brown, this action

seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

*The Currency's seizure and law enforcement's investigation*

10. On June 12, 2023, during an interdiction operation at the Charlotte airport, K9 Cali, a properly trained and certified drug detection canine, alerted to the odor of narcotics on/from a checked suitcase that had been placed in a lineup of five suitcases prior to being loaded on American Airlines flight 1966 to Los Angeles, California, a known drug source location.

11. The suitcase's luggage tag indicated it belonged to Evan Adams.

12. Law enforcement located Adams in the boarding area prior to the flight's departure, and TFO Brown asked to speak with him.

13. Adams agreed, and the law enforcement team and Adams moved to a more private area of the concourse a short distance away.

14. Adams was informed of the K9 alert and granted consent to search the suitcase. He then unlocked it for law enforcement.

15. The search revealed the Currency hidden among clothes in the suitcase:





16. While TFO Cerdan searched the suitcase, TFO Brown interviewed Adams.

17. During the interview, Adams told TFO Brown that the suitcase contained "a lot of money," later stating that it totaled $100,000.

18. Adams claimed the cash in the suitcase belonged to his cousin, John Lanci, who Adams had been purportedly visiting in Myrtle Beach.

19. Adams told TFO Brown that Lanci was employed as a nurse, Adams was traveling to Los Angeles to see family, and the money was being transported for "family issues."

20. Adams stated the money was not his, but he was to drop it off with some family members when he arrived in Los Angeles.

21. However, when TFO Brown asked Adams if they were really family members, Adams responded "no."

4

Case 3:23-cv-00825-FDW-DCK    Document 1    Filed 12/04/23    Page 4 of 9

22. Adams refused to provide any contact information for Lanci—the purported owner of the Currency—so that Lanci could be provided with a notice of seizure, and declined to allow TFO Brown to view any text messages between Adams and Lanci that might corroborate Adams' story.

23. Law enforcement later contacted Lanci as he was travelling through the Miami Airport. When interviewed by federal air marshals there, Lanci unequivocally stated the Currency was not his and he had never given it to Adams.

24. After the seizure, a second properly trained and certified drug detection canine, K9 Benny, alerted to the odor of narcotics from the Currency after being deployed on a blind lineup of five plastic boxes, of one which contained the Currency.

25. Adams' travel history is consistent with that of a drug or money courier: for example, Adams (who resides in Webster, Texas), booked nine flights in the six months prior to seizure between Texas or the east coast and California, often staying for two days or less. Many of these tickets were purchased last minute at a premium—Adams spent at least $3,214.84 on airline tickets during this period. And, Adams often traveled with another unrelated individual, Hassan Ahmad, who had previously purchased Adams' airline tickets and has been the subject of currency seizures at other airports.

26. The Currency was transported to Loomis for counting, and totaled $70,796, in denominations of 46 $1 bills, 32 $5 bills, 61 $10 bills, 2,994 $20 bills, 90 $50 bills, and 56 $100 bills—a composition that, along with the Currency's packaging in rubber-banded bundles, is consistent with the proceeds of, or money involved in, street level narcotics sales.

*Bianca Wagner's claim to the Currency*

27. On August 31, 2023, Bianca Wagner submitted an administrative claim to the

Currency through her attorney, Leslie Sammis, asserting under oath and subject to penalty of perjury that the Currency belongs to her and/or her company "My Tail Ways, LLC," and that Evan Adams was her employee at the time of seizure.

28. Bianca Wagner lives in Twinsburg, Ohio and does not appear to have any connection (legitimate or otherwise) to either Adams (who lives in Texas) or the Currency (seized in Charlotte on its way to California).

29. Notably, when TFO Brown contacted Ahmad and Adams by phone after the seizure, neither would admit to knowing Wagner.

30. Wagner's criminal history, which includes an Ohio conviction for making false allegations against a peace officer, and history of making dubious insurance claims (*i.e.* those meeting the criteria for fraud bureau reporting), both bear on the credibility of her claim to the Currency.

31. Further, Wagner has filed for bankruptcy in federal court ***five times*** between 2004 and 2022. In her October 2021 filings, Wagner averred under oath that she had been unemployed since March 15, 2021, that she received unemployment income, and that her bank balances were *negative* $9, *negative* $133, and *negative* $7 (with $100 cash in her wallet). Similarly, in her March 2022 filing, she stated she had been unemployed for all of 2022, with no mention of a "My Tail Ways, LLC" business.

32. Wagner's bankruptcy filings make it highly implausible that she somehow legitimately earned the $70,796 in Currency in a short time period prior to the seizure.

33. In all, the Government presently believes Wagner has filed a fraudulent claim to the Currency in violation of 18. U.S.C. § 1001.

34. Nonetheless, the Government's duty to pursue judicial forfeiture is not contingent

6

Case 3:23-cv-00825-FDW-DCK   Document 1   Filed 12/04/23   Page 6 of 9

on the ultimate validity of any particular administrative claim submitted, and thus, the Government files this action against the Currency seeking its forfeiture.

### FIRST CLAIM FOR RELIEF – THE $70,796.00 IN CURRENCY
### (21 U.S.C § 881(a)(6))

35. The United States incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

36. The $70,796.00 in Currency is subject to forfeiture pursuant to 21 U.S.C. § 881 (a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

### CONCLUSION AND PRAYER FOR RELIEF

37. By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the Currency be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the Currency to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 4th day of December, 2023.

DENA J. KING
UNITED STATES ATTORNEY

/s/ Seth Johnson
J. Seth Johnson
Texas Bar No. 24083259
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 338-3159
Email: seth.johnson@usdoj.gov

## VERIFICATION

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 1st day of December, 2023.

_____
TFO Stephen G. Brown
Department of Homeland Security,
Homeland Security Investigations